# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## DECEMBER SESSION, 1998

FILED

June 7, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **JOHNNY CARL WEAVER,** | ) | **C.C.A. NO. 03C01-9801-CR-00041** |
| Appellant, | ) | |
| | ) | |
| | ) | **KNOX COUNTY** |
| **VS.** | ) | |
| | ) | **HON. RICHARD R. BAUMGARTNER** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Post-Conviction Relief)** |

FOR THE APPELLANT:

LESLIE M. JEFFRESS
P. O. Box 2664
Knoxville, TN  37902-2664

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TODD R. KELLEY
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN  37243

RANDALL E. NICHOLS
District Attorney General

ANDREW JACKSON, VI
Assistant Attorney General
400 Main Avenue
Knoxville, TN  37902

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On August 21, 1987, a Knox County jury convicted Appellant Johnny Carl Weaver of third degree burglary, grand larceny, and being a habitual criminal. On November 10, 1987, the trial court sentenced Appellant to life imprisonment in the Tennessee Department of Correction. This Court subsequently affirmed Appellant's convictions and sentence on December 8, 1988. Appellant filed a petition for post-conviction relief on October 25, 1991, and an amended petition on March 25, 1994. The post-conviction court held an evidentiary hearing on the petition on September 15, 1994, and dismissed the petition on January 12, 1998. Appellant challenges the dismissal of his petition, raising the following issues:

> 1) whether Appellant's trial counsel was ineffective in failing to take action to preserve an audio tape that might have contained exculpatory evidence;
> 2) whether Appellant's trial counsel was ineffective in failing to file a motion asking the trial court to prohibit the State from directing witnesses not to talk about the case without prior approval by the prosecutor; and
> 3) whether Appellant's trial counsel was ineffective in failing to object to the trial court's statement at the close of the first day of deliberations that the jury should return the next day and deliberate further and "then give us a report one way or the other."

After a review of the record, we affirm the post-conviction court's dismissal of the petition.

## I. FACTS

The record indicates that on May 8, 1986, Doane's Market in Knoxville, Tennessee was being monitored by Sonitrol Security Company to the extent

that sound from inside the market was audible at Sonitrol's monitoring location. Rebecca Lenear, the Sonitrol employee who was monitoring the security system on that date, heard some glass breaking at 2:22 a.m. Lenear then called the police and the owner of the market to report what she had heard. At 2:25 a.m., Lenear called the police again to report that at least two people were in the market.

Shortly thereafter, Officer Steve Griffin of the Knoxville Police Department arrived at the market and saw Appellant come out of the market with some cigarettes and saw another individual walking away from the market. Appellant then dropped the cigarettes and ran. Officer Griffin pursued Appellant and found him hiding under a car.

A subsequent inspection revealed that the door of the market had been battered to allow for entry. The police also discovered that some food stamps had been taken and that several items had been stacked outside the market.

## II. ANALYSIS

Article I, Section 9 of the Tennessee Constitution provides "that in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel." Tenn. Const. art I, § 9. Similarly, the Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. "These constitutional provisions afford to

the accused in a criminal prosecution the right to effective assistance of counsel." Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he or she must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he or she must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067–68, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Id. "Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "The burden is on the petitioner to show that the evidence preponderated against those findings." Id.

**A. Audio Tape**

Appellant first contends that his trial counsel was ineffective in failing to take action to preserve an audio tape of the break-in at the market that might have contained exculpatory evidence. Specifically, Appellant argues that

-4-

because he has maintained all along that he did not break into the market, but merely entered the market after it had already been broken into, an audio tape of the break-in might have contained evidence that would have exonerated him as the person who broke into the market.

In its order denying Appellant's petition, the post-conviction court found that the only voice Lenear heard on the night of the break-in was someone yell "Take that."  The post-conviction court also found that because Lenear testified at trial that she was unsure whether the incident at the market had been recorded, it was not clear that any audio tape of the event ever existed. The post-conviction court also found that because Lenear testified that if the incident had been recorded, it would not have been recorded until after the glass had broken, the only thing on an audio tape would have been the single verbal statement "Take that."  Thus, the lower court found that if the audio tape had ever existed, it would not have contained anything that would have been helpful to Appellant.

In this case, the evidence simply does not preponderate against the post-conviction court's findings of fact.  Indeed, Appellant concedes in his brief that the alleged audio tape may have never existed.  Further, Appellant also concedes that there is no evidence that the alleged tape would have contained any exculpatory material.  Rather, Appellant claims only that it might have. Because Appellant has obviously failed to demonstrate that his counsel's alleged deficiency in failing to secure the alleged tape "actually had an adverse effect on the defense," the post-conviction court was correct in

determining that Appellant was not entitled to relief on this basis.  See Henley, 960 S.W.2d at 580.  This issue has no merit.

## B.  Witnesses

Appellant also contends that his trial counsel was ineffective in failing to file a motion asking the trial court to prohibit the State from directing witnesses not to talk about the case without prior approval by the prosecutor.

The record indicates that shortly before trial, Appellant's trial counsel informed the trial court that two of the State's witness had declined to talk to him and stated that they would have to clear it with the district attorney's office first.  The trial court then stated that it would have a recess so that Appellant's trial counsel could talk to both of the witnesses before they testified. At the post-conviction hearing, Appellant stipulated that, if called, the prosecutor would testify that he merely told the witnesses "that they had the right to talk or not to talk to the defense attorney as it is their wish."

The post-conviction court found that although the witnesses had initially declined to talk to Appellant's trial counsel, trial counsel did have the opportunity to talk to both witnesses before they testified.  Thus, the post-conviction court concluded that Appellant had not been prejudiced by the fact that trial counsel's initial efforts to interview the witnesses had been unsuccessful.

Although Appellant maintains that his trial counsel was deficient in failing to take action that may have induced the witnesses to talk to him sooner, Appellant has failed to indicate how he was prejudiced by this alleged deficiency. Indeed, assuming that the witnesses would have agreed to talk to Appellant's trial counsel if he had taken the desired action, Appellant has failed to indicate what his counsel could or would have done differently than he did after interviewing the witnesses shortly before trial. In fact, Appellant's only complaint is that by having to interview the witnesses right before trial, his trial counsel did not have "a more leisurely interview . . . when trial pressures are not so great." This allegation is simply insufficient to establish prejudice. Because Appellant has failed to demonstrate that his counsel's alleged deficiency in failing to ask the trial court to prohibit the State from directing witnesses not to talk about the case without prior approval "actually had an adverse effect on the defense," the post-conviction court was correct when it determined that Appellant was not entitled to relief on this basis. See Henley, 960 S.W.2d at 580. This issue has no merit.

### C. Instruction to the Jury

Appellant further contends that his trial counsel was ineffective in failing to object to a statement that the trial court made to the jury at the close of the first day of deliberations.

The record indicates that at the end of the first day of jury deliberations, the following colloquy occurred:

-7-

THE COURT: All right. Mr. Tharpe, I understand that you are the foreman of this jury, and I understand, sir, that the jury has been unable to reach a verdict at this point; is that correct?

THE FOREMAN: That's right, sir.

THE COURT: All right. I am going to ask that—we will go ahead and break, because you have been at this for a long time here yesterday and today both. I am going to ask that you come back at 9 o'clock in the morning and deliberate a little further on the case, and then give us a report one way or the other.

THE FOREMAN: Thank you, sir.

Shortly after the jury retired, the trial court made the following comment:

THE COURT: The foreman, Mr. Tharpe, reported to Mr. Keys, the court officer, that the jury has been unable to reach a verdict. And he further stated that he feels that they are going to be unable to reach a verdict in this case. However, I have not chosen to charge them further, but I have asked them to come back and deliberate again in the morning. I am sure that they will not come back real soon. . . . If they do report to me again in the morning that they still are unable to reach a verdict, then I am not going to insist that they deliberate further, after they have had all night to think about it and all that. I will just declare the jury to be hung at that time.

The next morning, the jury deliberated from 9:00 a.m. to 11:54 a.m., at which time the jury returned with the verdict.

The post-conviction court found that the trial court's decision to recess at 6:00 p.m. after three hours of deliberations was entirely appropriate. In addition, the post-conviction court found that the trial court's direction to the jury to deliberate further the next morning and then report its decision "one way or the other" did nothing to improperly influence the jury in its deliberations.

Appellant cites Kersey v. State, 525 S.W.2d 139 (Tenn. 1975), for the proposition that his trial counsel was ineffective in failing to object to the trial court's statement that the jury should deliberate further "and then give us a report one way or the other." Specifically, Appellant contends that the trial

court's comment amounted to the kind of "dynamite" or <u>Allen</u> charge that was condemned by the Tennessee Supreme Court in <u>Kersey</u>, 525 S.W.2d at 144. The "dynamite" or <u>Allen</u> charge was taken from <u>Allen v. United States</u>, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896):

> [T]hat although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority . . . .

The Tennessee Supreme Court found this type of instruction impermissible because it invades the province of the jury and dilutes the requirement of unanimity by embarrassing and coercing a juror into surrendering views that are conscientiously entertained. <u>Kersey</u>, 525 S.W.2d at 144.

We conclude that the trial court's comment in this case is simply not the type of "dynamite" or <u>Allen</u> charge that was condemned in <u>Kersey</u>. Instead, the trial court's comment is similar to the instructions upheld by this Court in <u>State v. Baxter</u>, 938 S.W.2d 697 (Tenn. Crim. App. 1996), and <u>State v. Dick</u>, 872 S.W.2d 938 (Tenn. Crim. App. 1993). In <u>Baxter</u>, this Court held that a trial court did not err when it gave the following instruction to a jury that had reported that it had been unable to agree on a verdict:

> You've actually deliberated a relatively short period of time. That's less than three hours. I'm not—don't know how long I'm going to have you deliberate. It could go to tomorrow. At any event, I'm going to have you continue to deliberate. I'd ask that—this is an important case. A lot of time and effort has been put into the case. I would hope that you would

continue and attempt to come to a verdict. In any event, I'm going to discharge you to continue to deliberate.

938 S.W.2d at 703–05. This Court stated that the trial court had merely ordered the jury to continue deliberating and had not directed any of its comments to jurors in the minority or urged such jurors to reevaluate or to cede their views to those of the majority. Id. at 704. Similarly, in Dick, this Court held that a trial court did not err when it made the following comment to the jury after the jury announced that it was unable to reach a verdict:

> Well, you haven't been out that long really. We don't need to know how you're individually split, guilty or innocent, but if you're still discussing the case, and you need to discuss it, and if you reach a point that you just absolutely know that you're not going to be able to do anything, that's when you need to let us know. You need to get to that point, or to the point where you've reached a verdict, then you need to come back, either way. But, it's only 4 o'clock, and we've got a couple or three good hours here that we can work on this, and have plenty of time today. So you all take your time and go through it and discuss it, look at the charge we have given you and work with it, because that's what you're supposed to do. You're supposed to discuss it, take votes and that type thing. If you all will do that. Go back and have refreshments; are there cokes and things?

872 S.W.2d at 946.

As in Baxter and Dick, we find nothing objectionable in the trial court's comment in this case. There was nothing improper in ordering the jury to deliberate further after the panel reported that it had been unable to agree on a verdict. The trial court's comment was not directed at any juror in the minority, nor was it a direction to any jurors that they should concede their views in order to achieve unanimity. When taken in context, it is clear that the trial court's instruction to "deliberate a little further" and then give "a report one way or the other" could not be construed by a reasonable juror as an order to reach a unanimous verdict.

-10-

Because there was nothing improper about the trial court's comment to the jury, Appellant's trial counsel was not deficient in failing to object to the comment, and Appellant was not prejudiced thereby. Because Appellant has failed to show that his counsel was deficient in failing to object to the comment or that he was prejudiced thereby, the post-conviction court was correct when it determined that Appellant was not entitled to relief on this basis. See Henley, 960 S.W.2d at 580. This issue has no merit.

The judgment of the post-conviction court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
DAVID G. HAYES, JUDGE


_____
JAMES CURWOOD WITT, JR., JUDGE